UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| **Jorge Geraldo Lazaro,** | : | Case No.   22-11871 (PMM) |
| | : | |
| Debtor. | : | |

# **O P I N I O N**

## I.  INTRODUCTION

Jorge Geraldo Lazaro (the "Debtor"), like most in chapter 13 bankruptcy, seeks to confirm a plan that would cure the mortgage arrears and allow him to stay in his home located at 1932 W. Allen Street in Allentown, PA  (the "Property"), where he has lived for over a decade.[1]

The Debtor did not buy his home.  Rather, the debtor's father, Jorge J. Lazaro (the "Debtor's Father"), the original owner, transferred the Property jointly to himself and the Debtor in 2012 for $1.00.  The mortgage on the Property, however, remains exclusively in the name of the Debtor's Father.  These facts mean that the transfer violated a "due- on sale" clause in the Debtor's Father's mortgage, a provision which prohibits transfer of the Property without the lender's prior authorization.

Towd Point Mortgage Trust ("Towd"), the current owner of the mortgage, objects to confirmation of the Debtor's chapter 13 plan (the "Plan"), asserting that the Debtor cannot cure the mortgage arrears – the monetary default – without first curing the non-monetary default (the

---

[1]     Counsel for the Debtor informed the Court on April 20, 2023 (during a hearing on another matter) that the Property was damaged by a fire.  No further facts or details have been provided; no record of or pleading related to the events has been submitted.  While damage caused by the fire may – possibly and eventually – render the current matter moot, as of this writing the property secures the mortgage and, therefore, the dispute remains an actual controversy.

breach of the due-on-sale clause). Towd also argues that confirmation of the Plan would amount to an impermissible modification of the mortgage.

The Debtor maintains that he seeks only to cure the arrears rather than to modify his father's mortgage and that the relief proposed by the Plan is specifically allowed by the Bankruptcy Code.

There are compelling arguments on both sides of this debate. After consideration, and for the reasons discussed below, I hold that the Debtor may cure the monetary default by way of his chapter 13 Plan and that such a cure is distinguishable from a modification of the mortgage.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### *History of the Property and Mortgage*

In 2006, the Debtor's Father executed a note and mortgage (the "Mortgage") in favor of Countrywide Home Loans, Inc. in the amount of $131,880.00. The Mortgage was secured by the Property then owned exclusively by the Debtor's Father.

The Mortgage was transferred to BAC Home Loans Servicing, LP in 2011, to Nationstar Mortgage LLC ("Nationstar") in 2013, and to Towd in 2018.

On July 14, 2012, the Debtor's Father transferred for $1.00 the Property to himself and the Debtor. The Mortgage, however, was not transferred and the mortgagee was not notified of the transaction.

### *The Mortgage and Modification*

Section 18 of the Mortgage states, in relevant part:

If all or any part of the Property or any Interest in the Property is **sold or transferred . . . without Lender's prior written consent, Lender may require immediate payment in full** of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. If Lender

2

exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.

Ex. B to First Motion for Relief (the "Due-on-Sale Clause") (emphasis added).

The Debtor's Father and Nationstar executed a modification of the Mortgage on October 1, 2015.[2]

*The Debtor's Previous Bankruptcy Filings*

The Debtor filed three (3) previous chapter 13 petitions in this court:

- Case no. 12-17057 (the "First Case"): filed on July 26, 2012 and dismissed on January 13, 2013. The Debtor listed the Property on schedule A as being jointly owned with his father. No plan was confirmed.

- Case no. 13-17322 (the "Second Case"): filed on August 22, 2013 and dismissed on November 6, 2014. The Debtor listed the Property on schedule A as being jointly owned with his father. A Plan was confirmed on April 24, 2014, but the case was dismissed for failure to make plan payments.

- Case no. 15-13575 (the "Third Case"): filed on May 20, 2015 and was discharged on November 13, 2017. The Debtor listed the Property on schedule A as being jointly owned with his father. A Plan was confirmed on February 11, 2016. Following a Notice of Final Cure of mortgage arrears filed by the chapter 13 Trustee, the Debtor received a discharge.

In the Second Case, Nationstar, who at that time held the Mortgage, filed both an objection to confirmation and a motion for relief from the automatic stay. Both pleadings acknowledge that the Property is owned jointly by the Debtor and his father and make no mention or argument regarding a non-monetary default of the Mortgage.

In the Third Case, a Motion to Approve a Loan Modification filed by Nationstar was approved by the Court on November 10, 2016. Doc. #33 (the "Motion to Approve"). The Motion

---

[2] This modification was approved in one of the *Debtor's* prior bankruptcies. Doc. # 33 in case 15-13575.

3

states that Debtor applied for and was approved for a modification; however, the attached modification agreement includes only the name of the Debtor's Father.  The Motion to Approve neither mentions nor contemplates a violation of the Due-on-Sale Clause.

*The current bankruptcy filing*

The Debtor filed this chapter 13 case on July 18, 2022.  The Property appears on the Debtor's schedules as being "jointly owned with Debtor's father" as a tenancy in common.  See Schedules A/B and H.  Towd's secured Proof of Claim, filed on September 16, 2022 in the amount of $245,987.95, states the arrears on the mortgage in the amount of $46,643.73.

Prior to the current bankruptcy filing, a foreclosure action was commenced by Towd in the Court of Common Pleas.[3]  In September 2022, Towd filed a Motion for Relief from the Stay. Doc. #13, amended at doc. #19 (the "First Motion for Relief").  The First Motion for Relief alleged that *in rem* relief was warranted because the Property was fraudulently transferred (from Debtor's Father to Debtor and his father jointly).  The Motion stated an alternative ground for relief, alleging that the Debtor's bad faith is demonstrated by the fact that the Debtor "is incapable of curing the mortgage default[] while retaining the Property."  Motion at ¶17. Following a hearing on the merits, the First Motion for Relief was denied.

On April 11, 2023, Towd filed another motion for relief (doc. #50, the "Second Motion for Relief"), alleging that the Debtor was $2,607.66 in arrears post-petition. The Debtor did not oppose this Motion and an Order was entered on May 2, 2023 granting the relief.

The Debtor's proposed Plan seeks, *inter alia*, to cure a monetary default on the Mortgage in the amount of $46,643.73.

---

[3] The mortgagee does not indicate in the foreclosure complaint that the Due-on-Sale Clause may have been violated; the foreclosure action resulted from a default in payments.

4

Towd objects to confirmation because it contends that the Plan is "infeasible as Debtor is incapable of curing all existing defaults under the terms of the mortgage." Objection at 1. The only way to cure the default would be to transfer the Property back to the Debtor's Father.

Following a contested and continued confirmation hearing, the parties submitted briefs regarding the question of whether the Debtor can cure the mortgage default in chapter 13 or whether such a plan is futile.

### III. THE PARTIES' ARGUMENTS

The Debtor argues that the purpose of the Plan is to cure only the monetary mortgage default. The Debtor's Brief suggests, without benefit of citation to law, that the non-monetary default may be enforced outside of the bankruptcy process and that such protection is adequate.

Towd makes several points in response:

- The Code requires a plan to cure all defaults by taking care of the "triggering" event;

- If the Debtor were to cure the non-monetary default by removing himself from the title to the Property, then he would be unable to cure the monetary default; and

- Confirmation of the Plan would compel the creditor impermissibly to modify the mortgage to accept payments from the Debtor, with whom Towd is not in privity.

### IV. RELEVANT BACKGROUND LAW

#### A. Due-on-Sale Provisions

This dispute concerns the relevance in bankruptcy of the boilerplate mortgage language which prohibits the unauthorized transfer of secured property to a third party. A "due-on-sale clause" is a contract provision which allows a lender, at its option, "to declare due and payable sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent." 12 U.S.C. § 1701j–3(a)(1) (St. Germain Depository Institutions Act).

5

Due-on-sale clauses, which are standard in most mortgage agreements, serve two (2) purposes. First, such a provision ensures that a lender will only contract with individuals whom they assess to be a good credit risk. In re Mullin, 433 B.R. 1, 3 (Bankr. S.D. Tex. 2010). Second, due-on-sale clauses allow a lender to recall below market interest loans and to maintain a portfolio that reflects market rates. Arthur J. Margulies, The Cure and Reinstatement of Mortgages by Third Party Assignees, 24 Cardozo L. Rev. 449, 454–55 (2002).

### B. The St. Germain Act

The policy of protecting lenders from an unfavorable transfer of a mortgage was codified by Congress in 1982 with the passage of the Garn-St Germain Depository Institutions Act (the "St. Germain Act"). The St. Germain Act protects the validity of due-on-sale provisions,[4] regardless of state law to the contrary and provides, in relevant part:

> Notwithstanding any provision of the constitution or laws (including the judicial decisions) of any State to the contrary, a lender may . . . enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan.

12 U.S.C.A. § 1701j-3(1) (West).

Pennsylvania law conforms to this standard, allowing the inclusion of due-on-sale clauses in mortgages. See generally 15 West's Pa. Prac. Mortgages §8.5 (3d ed.) (citing cases in fn.3); Marra v. Stocker, 532 Pa. 187 (1992); New Home Federal Sav. And Loan Ass'n v. Trunk, 22 Pa. D &C 3d 399, 420 (1982).

---

[4] However, under the St. Germain Act, "a lender may not exercise its option pursuant to such a 'due-on-sale' clause when the transfer is to a relative resulting from the death of the borrower *or when the spouse or children of the borrower become an owner of the property*. 12 U.S.C. §§ 1701j–3(d)(5) and (6) (emphasis added); In re Alexander, 2007 WL 2296741, at *3 (Bankr. N.D. Fla. Apr. 25, 2007) (holding that a due-on-sale clause was not effective upon transfer to the Debtor's children following the death of the Debtor); In re Martin, 176 B.R. 675, 676 n.1 (Bankr. D. Conn. 1995).

Here, neither party raises the issue of whether the fact that the relevant transfer was made from father to son affects the analysis. Therefore, I too will assume that the Due-on-Sale Clause is valid.

**Split in Authority Regarding the Issue Presented**

The question presented - whether a debtor who is not in privity with the mortgagee may cure default in a chapter 13 plan - has divided courts.  See generally In re Mullin, 433 B.R. 1, 12 (Bankr. S.D. Tex. 2010); In re Tewell, 355 B.R. 674, 680 (Bankr. N.D. Ill. 2006) (describing the split ).

In broad terms, the division breaks down as follows: some courts determine that allowing a debtor to cure a default on a mortgage where there has been a violation of the due-on-sale clause would amount to an impermissible modification in violation of 11 U.S.C. §1322(b)(2) (the "First Line of Cases").[5]  The competing authority (the "Second Line of Cases") holds that because the mortgage is a claim on the debtor's property, the default on the lien may be cured, regardless of whether the debtor is in privity with the mortgagee.[6]

There is no binding authority on this Court.[7]

## V. ANALYSIS

I agree with the Second Line of Cases and, therefore hold that the Debtor's proposed Plan may be confirmed and the monetary default cured despite the fact that the Mortgage is only in the name of the Debtor's Father.

---

[5]  See e.g. In re Espanol, 509 B.R. 422, 427 (Bankr. D. Conn. 2014); In re Mullin, 433 B.R. 1 (Bankr. S.D. Tex. 2010) (noting that a cure of the mortgage would require reinstatement of property in original holder's name); In re Tewell, 355 B.R. 674, 681 (Bankr. N.D. Ill. 2006) ("To allow debtors to effectively ignore due on sale clauses invoked by holders of home mortgages stretches the language of § 1322(b)(2) past the breaking point."); In re Threats, 159 B.R. 241 (Bankr. N.D. Ill. 1993); In re Allen, 300 B.R. 105, 116 (Bankr. D.D.C. 2003).

[6]  See, e.g., In re Smith, 469 B.R. 198, 201 (Bankr. S.D.N.Y. 2012); In re Garcia, 276 B.R. 627, 633 (Bankr. D. Ariz. 2002); In re Rutledge, 208 B.R. 624, 628 (Bankr. E.D.N.Y. 1997).

[7]  In re Lippolis, 228 B.R. 106 (E.D. Pa. 1998) is distinguished *infra* and, in any event, is not binding precedent.

*Cure of the Monetary Default is Distinguishable from a Modification of the Mortgage*

The division between the First and Second Line of Cases results, in large part, from a disagreement about whether curing a monetary default in a mortgage pursuant to which there is a non-monetary default results in an impermissible modification of the lending agreement.

I hold that such a cure of the monetary default is possible and does not violate 11 U.S.C. §1322 (b)(2).

I start with the understanding that the Code allows "*any*" default to be cured. 11 U.S.C. §1322(b)(3) (emphasis added); see also §1322(b)(5); In re Garcia, 276 B.R. 627, 637 (Bankr. D. Ariz. 2002) ("the drafters did not intend to exclude any particular kinds of defaults from the right to cure").[8]

The meaning of cure, in turn, is to "remedy or rectify the default and restore matters to the *status quo ante*." Sapos v. Provident Inst. of Sav. in Town of Boston, 967 F.2d 918, 926 (3d Cir.1992) (citation omitted). A cure of a default should return circumstances to where they were prior to the default. This provides a remedy for the breach.

Towd insists, however, that curing a default necessitates "taking care of the triggering event . . . ." and thus concludes that in order to effect a "cure" of the Due-on-Sale Clause, the Property would first need to be transferred back to the Debtor's Father. In re Taddeo, 685 F.2d 24, 26 (2d Cir. 1982).

But a look at the complete passage from Taddeo points in a different direction. The Second Circuit there stated:

---

[8] A debtor not in privity with a mortgagee may cure a monetary default. In re Garcia, 276 B.R. 627, 631-33 (Bankr. D. Ariz. 2002); In re Rutledge, 208 B.R. 624, 628 (Bankr. E.D.N.Y. 1997) (citing Johnson v. Home State Bank, 501 U.S. 78 (1991)).

8

> When Congress empowered Chapter 13 debtors to 'cure defaults,' we think Congress intended to allow mortgagors to **'de-accelerate' their mortgage and reinstate its original payment schedule**. We so hold for two reasons. First, we think that the power to cure must comprehend the power to 'de-accelerate.' This follows from the concept of 'curing a default.' A default is an event in the debtor-creditor relationship which **triggers certain consequences**-here, acceleration. Curing a default commonly means taking care of the triggering event and **returning to pre-default conditions. The consequences are thus nullified**. . . This history and the policy discussed above compel the conclusion that § 1322(b)(5) was intended to permit the cure and de-acceleration of secured long-term residential debt accelerated prior to the filing of a Chapter 13 petition.

In re Taddeo, 685 F.2d 24, 26–27 (2d Cir. 1982) (emphasis added) (further holding that the ability to cure under §1322(b)(3) and (b)(5) is not limited by the anti-modification provision of §1322(b)(2)).  Taddeo stands not for the proposition that a cure necessarily involves reversing the *cause* of a default, but rather that rectifying a default entails taking care of the monetary *consequences* of a default.

As explored in In re Garcia, 276 B.R. 627, 634 (Bankr. D. Ariz. 2002), and discussed below, the rights of a lender complaining of the violation of a due-on-sale clause will likely be adequately protected by the payment of the mortgage balance; money is what is at stake.  A mortgagee who can demonstrate that monetary relief is for some reason inadequate may receive relief from the stay in order to pursue additional remedies in state court.  But it is unlikely that the non-monetary default itself will be cured during the chapter 13.  See *Lundin*, Chapter 13 *Bankruptcy* § 82.3 (4th Ed. 2023) (noting that it is "conceptually difficult" to see how a debtor cures a non-monetary default and expressing doubt about the feasibility of curing a pre-petition due-on-sale clause through a chapter 13 plan).  I agree with Towd that a cure of the *non-monetary* default of the Due-on-Sale Clause would involve a re-transfer of the Property.  However, Towd fails to show any prejudice to it resulting from the mere fact that the Property was transferred.  At the March 23, 2023 hearing, Towd acknowledged that any purchaser takes the Property subject to the existing liens.  Towd remains protected.

Critically, curing the monetary default is all that the Debtor seeks to do by way of his Plan; he does not purport to cure the non-monetary default of the Due-on-Sale Clause. Confirmation of the Debtor's Plan would effect relief specifically allowed by the Code. Matter of Birckelbaw, 33 B.R. 720, 722 (Bankr. E.D. Mich. 1983). Further, Towd's rights to enforce the Due-on-Sale Clause will ride through the bankruptcy, ready to enforce if and when Towd chooses.

*Allowing the Cure of the Non-Monetary Default does not Amount to a Modification*

But does not treating – or, more bluntly, ignoring – a violation of a due-on-sale clause during the pendency of a bankruptcy effectively, and impermissibly, modify the mortgage contract? I find that such treatment of a non-monetary default pursuant to §1322(b)(5) does not violate the anti-modification provision of §1322(b)(2).

"Cure" and "modification" are distinct concepts. As discussed, the scope of the debtor's ability to cure is broad; however, the scope of the antimodification clause is "narrow." In re Klein, 106 B.R. 396, 401 (Bankr. E.D. Pa. 1989); In re Garcia, 276 B.R. 627, 634 (Bankr. D. Ariz. 2002).

A plan may cure a monetary default without altering the terms of the mortgage. Towd will receive the benefits of its bargain, including payment of principle at the agreed rate of interest, as well as the right to accelerate the mortgage contract.

Towd responds that the unauthorized transfer of the Property to the Debtor succeeds in changing the agreed terms of the contract because the mortgagee has effectively lost the ability to vet its borrower. Towd did not agree to do business with the Debtor, who may be a greater credit risk than the Debtor's Father. This fact, however, does not *modify* the terms of the mortgage. It means, rather, that the Debtor's Father may have breached the mortgage contract

(whose terms remain consistent). Such breach is, in fact, contemplated by the language of the Mortgage, which allows Towd to accelerate payments under these circumstances. Thus far, Towd has chosen not to exercise this right, despite the fact that it had, at minimum, constructive knowledge of the transfer for more than ten (10) years prior to the current bankruptcy.[9]

Further distinguishing a cure of a mortgage default from a modification is the fact that a cure takes care of something that has already happened, whereas a modification amounts to a change of terms going forward:

> Both the automatic stay and cure deal with past defaults, whereas the modifications permitted (or prohibited) by § 1322(b)(2) concern future obligations. Thus the antimodification provision says nothing about what can or must be done about past defaults, but merely provides that the debtor's future obligations to a lender cannot be modified from what is provided in the loan documents.

In re Garcia, 276 B.R. 627, 635 (Bankr. D. Ariz. 2002) (noting the effect of the language of "rights" included in the two provisions).[10]

***The Default may be Remedied by Payment***

The upshot of Towd's complaint is that the default of the Due-on-Sale Clause must be reversed, and that confirmation of the Debtor's Plan would prevent, or at a minimum not satisfy, this requirement. Towd's argument has an initial appeal; the Debtor does not deny that the Mortgage has been breached. Further, the inclusion of Due-on-Sale Clause was a contractual provision which, at least in theory, was agreed on as part of the mortgage terms.

---

[9] Although Towd arguably sat on its rights by not raising the issue of the non-monetary breach prior to the current bankruptcy, the lender has not waived its rights to do so now. In re Espanol, 509 B.R. 422, 429 (Bankr. D. Conn. 2014); In re Tewell, 355 B.R. 674, 685 (Bankr. N.D. Ill. 2006).

[10] It is also possible that the anti-modification clause is not applicable here due to the fact that the Property may have been destroyed in a fire in early April, 2023. However, these facts have not been developed on the record.

11

But we must look at how, if at all, Towd has been harmed by the transfer. The question of Towd's damages is both theoretical – is relief warranted where a breach does not amount to a loss – and practical: can Towd be made whole without reversal of the transfer?

Neither its predecessors nor Towd sought acceleration of the loan, in spite of the fact that the mortgagee knew of the nonmonetary default years prior to the Debtor's current bankruptcy filing.[11] And if the Mortgage debt had been accelerated, the Debtor would have the ability to cure the default in his bankruptcy. In re Thomas, 626 B.R. 793, 801 (Bankr. E.D. Pa. 2021). The specified remedy for breach of the Due-on-Sale Clause is for the mortgagee to move for quicker payments; the document does not provide for the lender to receive damages simply because the Property was transferred. Further, if Towd found the Debtor's Father's conduct so egregious, see First Motion for Relief, we have to wonder why Towd failed to seek redress for the non-monetary default prior to the Debtor's bankruptcy.

Garcia, which denied stay relief to the lender and held that the debtors could cure a non-monetary default of a mortgage transferred in violation of a due on sales clause, is instructive here:

> [T]he Bank never complained about a violation of its due on sale clause until after the monetary default and, indeed, until after the bankruptcy was filed. The Bank's conduct, therefore, suggests that **all it was really concerned about was the money**—there was no complaint so long as payments were regularly made.

In re Garcia, 276 B.R. 627, 641 (Bankr. D. Ariz. 2002) (emphasis added). We can hardly be shocked that a mortgage company is motivated by profit. But this fact casts doubt on whether

---

[11] Contrary to the contention of Towd (see First Motion for Relief at 3), the mortgagee had at least constructive knowledge of the transfer. The Property has been identified as jointly owned between the Debtor and the Debtor's Father since the First Case (filed in 2012). The mortgagee filed several pleadings in the 2013 Second Case; these pleadings include reference to the fact that Property is jointly owned. During the pendency of the Debtor's prior case – the Third Case, filed in 2015- the lender entered into a modification of the Mortgage, which was approved by the Bankruptcy Court.

Towd has been harmed and will continue to be harmed by mere presence of the non-monetary default.

***Counter-Arguments***

As discussed, Towd maintains both that it is not obligated to accept payments from the Debtor and that allowing this case to move forward would violate the Bankruptcy Code.

Towd relies, in part, on In re Lippolis, 228 B.R. 106 (E.D. Pa. 1998). In Lippolis, the District Court reversed the Bankruptcy Court's Order denying stay relief and dismissed a case in which the property was transferred from mother (herself a bankruptcy debtor) to son (one of the debtors named in the case) on the eve of the sheriff's sale and in violation of the due-on-sale mortgage provision. The Court there found that a cure would require a re-transfer of the property and was thus not feasible.

The particular facts of Lippolis warranted relief and dismissal. The Debtor's mother, who was the original purchaser of the property, filed for bankruptcy protection. After receiving stay relief in the mother's bankruptcy, the lender scheduled a sheriff's sale. Two (2) days prior to that sale, the debtor dismissed her bankruptcy and sold the property to her son and his spouse for $1.00. The new owners of the property then immediately filed for bankruptcy, again subverting sale of the transferred property. The Lippolis Court specifically found that the because the bankruptcy had been filed in bad faith in order to thwart the rights of the creditor, that relief from the stay was appropriate. In re Lippolis, 228 B.R. 106, 112 (E.D. Pa. 1998).[12]

We have no evidence of bad faith here. And although Towd insists that the Debtor is executing a "scheme," the facts do not support that conclusion. First Motion for Relief at 4. The

---

[12] Similarly, In re Allen, 300 B.R. 105, 115 (Bankr. D.D.C. 2003) found that the debtor could not cure the non-monetary default where the debtor's conduct was inequitable; a half interest in the property was transferred to the debtor's mother on the eve of foreclosure.

Debtor's Father transferred the Property to the Debtor and himself jointly in 2012, about eleven (11) years ago.  The transfer was made not on the eve of a sheriff's sale but because the Debtor's Father's health was failing.[13]  The Debtor has been struggling to keep up with payments for nearly a dozen years. Towd presents no evidence that the motivation here is subversive.

A more compelling argument, but one which Towd doesn't directly make, is that the mortgagee has been harmed both by the delay in payments and the necessary litigation and attorney's fees that have resulted from the Debtor's bankruptcy filing.  The Debtor's Father- the mortgagor with whom Towd bargained- could also have filed for bankruptcy. But he did not do so. This bolsters Towd's assertion that it should not have to do business with someone with whom it didn't contract.

While the monetary harm suffered by Towd as a result of this bankruptcy lends credibility to the argument that Towd would have been better off being paid by the Debtor's Father (assuming he had the ability to pay) with whom it chose to do business, in the end I find this argument unconvincing for two (2) reasons. First, as discussed, the law allows bankruptcy debtors to cure defaults even when they lack privity with lenders.  The second reason is related to the first; one of the primary purposes of chapter 13 is to allow a debtor to remain in his home. E.g. In re Ortiz, 2008 WL 5157682, at *4 (Bankr. D.N.M. Aug. 14, 2008).  I therefore find that the balance of the harms weighs in favor of the Debtor.

## VI. CONCLUSION

This Opinion arguably dilutes the force of the Due-on-Sale Clause in the Mortgage. However, confirmation of the Debtor's Plan, if reached, will not erase this provision or even

---

[13]  The Debtor represented this to the Court at the February 2, 2023 confirmation hearing.

14

limit the availability of remedies. Towd will either get paid through the chapter 13 or can seek redress in state court.

Confirmation would therefore not violate Towd's rights. In balancing the interests between the chapter 13 Debtor, who is trying to stay in his home and pay off arrears, and the mortgage lender seeking the benefit of its bargain, I find that confirming a Plan which calls for the monetary cure of a mortgage in which there has been a non-monetary default is neither prohibited by the Code nor an affront to public policy.

**Date: May 12, 2023**

*Patricia M. Mayer*

**PATRICIA M. MAYER**
**U.S. BANKRUPTCY JUDGE**